NOT DESIGNATED FOR PUBLICATION

No. 111,440

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEE ROY CADA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed January 29, 2016. Appeal dismissed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Robert A. Walsh*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BUSER and GARDNER, JJ.

ATCHESON, J.: In November 2013, a jury sitting in Cloud County District Court convicted Defendant Lee Roy Cada of one count of aggravated criminal sodomy based on his sexual abuse of his common-law wife's 5-year-old granddaughter. Cada has appealed the jury's verdict and the resulting sentence of life in prison on multiple grounds. Before going further, we point out that Cada has served his sentence. He died in prison in September 2014, about a month after his appellate brief was filed. Under Kansas law, however, this appeal survives him only for limited purposes. See *State v. Hollister*, 300 Kan. 458, 458-49, 329 P.3d 1220 (2014).

1

Historically, the Kansas appellate courts have considered all issues a criminal defendant raised on appeal even if he or she died during the pendency of the appeal. *State v. Burnison*, 247 Kan. 19, 32, 795 P.2d 32 (1990); *State v. Jones*, 220 Kan. 136, Syl. ¶ 1, 551 P.2d 801 (1976). In that respect, Kansas stood in the minority camp. See *Hollister*, 300 Kan. at 465-66. Building on expressions of dissatisfaction in more recent cases with such a sweeping rule, the *Hollister* court recently reexamined the rule's utility and found it wanting.

The *Hollister* court tempered the old rule with well-accepted mootness principles to considerably narrow the sort of issues that ought to be reviewed in a criminal defendant's direct appeal after he or she has died. 300 Kan. at 467. A court may consider an appellate issue in that circumstance if it presents a matter of statewide importance or significant public policy, it "remains a real controversy," or it would likely be replicated in other cases. 300 Kan. at 467. In making that assessment, a court should consider whether a ruling on the issue favoring the deceased defendant would result in his or her exoneration. Thus, for example, an appellate court ought to review a challenge to the sufficiency of the evidence supporting a conviction because a favorable determination would require the conviction be reversed and the charge be dismissed—a ruling "clear[ing] [the defendant's] name." 300 Kan. at 467. Conversely, fact-laden issues that, at best, would result in reversal and remand for a new trial should be discarded on appeal as moot.

With the *Hollister* standards in mind, we dispense with a factual narrative of the evidence, including the abusive acts described by K.L., the victim. Rather, we consider whether the issues on appeal fit within the criteria for continued appellate review.

Cada asserted three challenges to the jury verdict. First, he contended the district court improperly limited cross-examination of the victim's mother about falsely reporting that she herself had been sexually abused years ago. Next, he argued for the first time on

2

appeal that the district court should have given the jury a unanimity instruction, since K.L. recounted more than one instance of sexual abuse constituting aggravated criminal sodomy. Finally, he submitted the prosecutor's closing argument unfairly prejudiced him by improperly commenting on witness credibility, appealing to the jurors' sympathy for K.L., and diluting the State's burden of proof.

None of these issues, even if successfully argued on appeal, would result in Cada's exoneration. At best, singularly or collectively, they would have deprived him of a fair trial, and his relief would have been a new trial. Moreover, the issues were inextricably tied to the facts of the case and the evidentiary record. None of them turns on a broad policy question or an important and undecided point of law that could be easily defined apart from the factual record. In other words, their resolution would require only the application of settled law to the facts of this case. In sum, *Hollister* directs us to treat the issues as moot.

On appeal, Cada also challenged the district court's handling of his posttrial motions in conjunction with the sentencing hearing. Cada personally filed what effectively were two motions for a new trial in addition to the motion his appointed lawyer filed. In his own motions, Cada claimed the district court allowed the jurors to see him briefly in shackles and outlined various ways he believed his lawyer inadequately represented him before and during the trial. At the hearing, Cada's lawyer expressly disavowed those allegations of inadequate representation and explained at some length why they were unfounded. Cada's lawyer, thus, argued against her own client. And Cada wound up presenting his own posttrial motions to the district court without the assistance of counsel.

But, as with the asserted trial errors, the issue before us could not result in an exoneration of Cada. At best, he would have been entitled to a remand for appointment of a new lawyer to reargue the posttrial motions. And, in turn, had any of those points been

3

successful, Cada would have gotten a new trial. (More than likely, however, the claims of ineffective assistance of trial counsel would have been denied, since they would have been more appropriately raised in a habeas corpus motion under K.S.A. 60-1507.) The issues themselves appear to have been quite fact specific and plowed no new or unresolved legal ground. Again, they do not fit within the *Hollister* criteria for consideration in light of Cada's death.

In conclusion, we find all of the points presented to us are of the type treated as moot in light of *Hollister* and its careful reexamination of the standards for deciding the merits of direct criminal appeals following the death of the defendant. Accordingly, this appeal is dismissed as moot.